**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marc A. Wichansky,<br><br>    Plaintiff,<br><br>v.<br><br>William J. Quinlan, *et al.*,<br><br>    Defendants. | No. CV-19-05087-PHX-JJT<br><br>**ORDER** |

At issue is Defendants' Motion to Dismiss Or, In The Alternative, For A More Definite Statement (Doc. 9, Mot.), to which Plaintiff filed a Response (Doc. 14, Resp.) and Defendants filed a Reply (Doc. 15, Reply). For the reasons that follow, the Court dismisses all claims against Defendants but grants Plaintiff leave to amend the Complaint.

**I.     BACKGROUND**

This matter is the latest in a long and tumultuous line of cases stemming from a business dispute between Plaintiff Marc A. Wichansky and his former business partner, David Zowine. The Court summarizes in relevant part that dispute and ensuing legal battles, as alleged in the Complaint and asserted in the briefing.

Plaintiff and Zowine were equal owners of a company called MGA Employee Services, Inc. (Doc. 1, Compl. ¶ 12.) At some point, Plaintiff determined that Zoel Holding Company, Inc. ("Zoel"), an MGA subsidiary managed at the time by Zowine, was improperly billing the State of Arizona for home healthcare services provided to Arizona Medicaid recipients. Plaintiff began investigating, at which point the relationship between

Plaintiff and Zowine soured to irreconcilability. Thereafter, Plaintiff attempted to "place Zowine on leave." (Compl. ¶ 22.) After Zowine refused, a lawsuit was initiated in state court in 2011, seeking dissolution of the partnership (the "Termination Action").[1] Ultimately, Zowine bought out Plaintiff's ownership in Zoel and Plaintiff went to work for a competitor, Team Select Home. In 2013, Zowine and Zoel sued Plaintiff and Team Select Home in state court for misappropriation of trade secrets (the "Misappropriation Action"). Collectively, the Court refers to these two cases as the "State Court Actions."

While the State Court Actions were proceeding, Plaintiff filed an action in federal court in 2013 alleging various claims against Zowine and other defendants (the "Federal Action"). Also around this time, Plaintiff filed a *qui tam* action against MGA, Zowine, Zoe Holding Company, Inc. (formerly Zoel or otherwise related to Zoel), and other defendants. In 2016, Plaintiff obtained a $27.5 million jury verdict—and later, judgment—in the Federal Action. The bulk of the liability and verdict was levied against Zowine, who then filed for bankruptcy. Zowine also appealed the result of the Federal Action to the Ninth Circuit Court of Appeals. While that appeal was pending, the Termination Action and Misappropriation Action were dismissed off the state court's Dismissal Calendar on March 12 and August 14, 2018, respectively. (*See* Doc. 9-1 Exs. 3 & 4.)[2]

As Zowine's bankruptcy case wended through the system, Plaintiff, Zowine, Zoe Holding Company, and several other parties reached a "Global Settlement," which settled and resolved all aforementioned lawsuits: the two State Court actions, the Federal Action, the *qui tam* action, and the bankruptcy action. The agreement set forth two conditions precedent to its enforceability: (1) the bankruptcy court's approval of the settlement agreement and Zowine's bankruptcy plan, and (2) Plaintiff's dismissal of the *qui tam* action. According to the Complaint, those conditions were respectively satisfied on

---

[1] The Complaint alleges Zowine initiated the lawsuit, (Compl. ¶ 38), while Defendants' Motion states Plaintiff brought the suit and Zowine counterclaimed for wrongful termination. (Mot. at 3.)

[2] Plaintiff does not dispute that the State Court Actions were dismissed as a procedural matter from the Dismissal Calendar. The Court can therefore take judicial notice of these public records without converting the motion to dismiss into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

1  September 5 and September 19, 2018. On October 20, 2018, the Ninth Circuit dismissed the appeal from the Federal Action.

The present Defendants William Quinlan and the Quinlan Law Firm's roles in this extensive history were as legal counsel for Zowine and Zoel (and other same-side parties) in both State Court Actions and the Federal Action.[3] Plaintiff now sues Defendants, raising claims of (1) malicious prosecution, (2) abuse of process, and (3) aiding and abetting tortious conduct, for their role in representing Zowine and Zoel. Plaintiff filed this action on September 4, 2019. Defendants move to dismiss all claims against them.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). On a Rule 12(b)(6) motion, Rule 8(a) governs and requires that, to avoid dismissal of a claim, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

. . . .

. . . .

. . . .

---

[3] Defendants assert they were no longer counsel for Zoel by the time the Misappropriation Action was dismissed. Defendants do not appear to claim involvement in the bankruptcy action or the Global Settlement, although Plaintiff alleges they were still representing Zowine when he filed for bankruptcy.

## III. ANALYSIS

### A. Malicious Prosecution

To state a claim for malicious prosecution of a civil proceeding,[4] Plaintiff must sufficiently allege Defendants "(1) instituted a civil action which was (2) motivated by malice, (3) begun without probable cause, (4) terminated in plaintiff's favor and (5) damaged plaintiff." *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 758 P.2d 1313, 1319 (Ariz. 1988).

The Court notes at the outset that neither the Complaint nor the Response states which civil action(s) forms the basis of Plaintiff's malicious prosecution claim—a deficiency the Court will discuss more fully below. The Complaint cursorily mentions the State Court Actions brought by Zowine while represented by Defendants. (Compl. ¶¶ 38, 40.) Later, directly under a reference to the Federal Action, which Plaintiff brought, the Complaint alleges Defendants filed "multiple, frivolous claims." (Compl. ¶ 43.) The Court will analyze a claim for malicious prosecution first in the context of the State Court Actions and then briefly in the context of the "multiple, frivolous claims," to the extent they refer to claims filed by Defendants in the Federal Action.

#### 1. Statute of Limitations

A cause of action for malicious prosecution has a one-year limitations period and accrues when the underlying civil action terminates in Plaintiff's favor and all appeals have concluded. *See Nataros v. Super. Ct. Maricopa Cty.*, 557 P.2d 1055, 1057 (1976); A.R.S. § 12-541. Focusing on the fourth element, Defendants argue that even if the dismissals of the State Court Actions from the Dismissal Calendar could be considered a "favorable" termination for Plaintiff, which Defendants deny, the terminations themselves occurred on March 12 and August 14, 2018. Therefore, a claim for malicious prosecution could have accrued no later than each dismissal, and was time-barred as of March 12 and August 14, 2019, respectively.

---

[4] Civil malicious prosecution is often and perhaps more properly referred to as "wrongful institution of civil proceedings." *Chalpin v. Snyder*, 207 P.3d 666, 672 n.5 (Ariz. Ct. App. 2008). Because the parties consistently use the term malicious prosecution, the Court does as well.

- 4 -

Plaintiff focuses on post-dismissal events, arguing all the underlying litigation, including the two State Court Actions, terminated in his favor with the Global Settlement. Specifically, either the bankruptcy court's approval of the Global Settlement on September 5, 2018, the dismissal of the *qui tam* action on September 19, 2018, or the Ninth Circuit's October 20, 2018, dismissal of the Federal Action appeal supplies the favorable termination date.[5] The present action was filed within one year of all three dates.

The Court finds that the State Court Actions terminated upon their dismissals from the Dismissal Calendar on March 12 and August 14, 2018. At the moment of each dismissal, the civil actions that form the first element of a claim for malicious prosecution were over. A later settlement purporting to settle and release at least five outstanding legal disputes between the underlying parties may or may not have resulted in a favorable outcome *in general* for Plaintiff. But the post-dismissal settlement was not a favorable termination of the State Court Actions themselves for the simple reason that they had already been terminated by final written order. (*See* Doc. 9-1 Exs. 3 & 4 (dismissing without prejudice all claims in the State Court Actions by "final written Order of the Court" and entering final judgment pursuant to Arizona Civil Rule of Procedure 54(d)).) The settlement's reference to the State Court Actions did not resurrect or extend their life.[6] To hold otherwise would enable the accrual date on a potential malicious prosecution claim to be extended indefinitely, so long as a settlement—or any other reference to the underlying

---

[5] It is unclear how the Ninth Circuit dismissal of the Federal Action relates to termination of the State Court Actions. Again, Plaintiff's filings lack precision as to which civil proceedings form the basis of his malicious prosecution claim. The Court presumes the reference to this Ninth Circuit dismissal pertains to a claim for malicious prosecution related to claims brought on behalf of Zowine in the Federal Action.

[6] Plaintiff's argument that the "dismissals could have been set aside and the actions reinstated upon request of either party" is unavailing. (*See* Resp. at 11.) The fact that the underlying proceeding could have been refiled following a dismissal or withdrawal does not preclude a subsequent malicious prosecution action. *See Overson v. Lynch*, 317 P.2d 948, 950–51 (Ariz. 1957). The Arizona Supreme Court cited *Jaffe v. Stone* for this rule. There, the California Supreme Court held, "It is immaterial whether the termination is a bar to any further prosecution for the same offense, or whether the accused may be charged and tried anew. Only if the new proceeding is already instituted can the accused be precluded from suing for malicious prosecution. This view is supported by the great weight of authority." *Jaffe v. Stone*, 114 P.2d 335, 341 (Cal. 1941).

proceeding—purported to address the legal dispute that was the subject of the underlying proceeding.

Plaintiff argues that had he brought the present case before the Global Settlement was approved or the *qui tam* action dismissed, Defendants would have moved to dismiss "on the basis that his claim was not ripe because the litigation was not terminated." (Resp. at 13.) In addition to this being speculation, whether Defendants would have moved to dismiss on ripeness grounds does not mean the claim would in fact be unripe. Contrary to Plaintiff's statement, the litigation *was* terminated, and the settlement occurred after that termination. Aside from hypothetical motions to dismiss, nothing precluded Plaintiff from filing a claim for malicious prosecution after the State Court Actions were dismissed.

Plaintiff also posits that a termination date predicated on the dismissals would raise factual disputes that cannot be resolved on a motion to dismiss. (Resp. at 14.) This argument conflates *whether* a termination is favorable with *when* the termination occurred. Plaintiff is correct that determining whether a dismissal is a favorable termination, as opposed to a procedural or technical occurrence, may require a look into "the substance rather than the form of prior events and often involves questions of fact." *See Frey v. Stoneman*, 722 P.2d 274, 279 (Ariz. 1986). This is because factors that are distinct from merits—such as funding, emotional costs, or forgiveness—may be at play in abandoning or withdrawing the underlying proceeding. *See id.* But whether the dismissals from the Dismissal Calendar substantively reflected on the merits is irrelevant if they occurred more than one year before a malicious prosecution claim is brought.

To the extent Plaintiff's malicious prosecution claim is aimed at the State Court Actions Defendants brought on behalf of Zowine, it is time-barred. Accordingly, the Court dismisses with prejudice the claim with respect to the State Court Actions.

### 2. Failure to State a Claim

The Complaint refers to "multiple, frivolous claims" Defendants made in what appears to be the Federal Action that Plaintiff brought against Defendants. (Compl. ¶ 43.) Under the Restatement, followed by Arizona courts, "one who files a counterclaim to a

cause of action initiates a civil proceeding." Restatement (Second) of Torts § 674 cmt. a. Thus, while Plaintiff has just barely alleged the first element of malicious prosecution, he fails to allege facts to support the remaining four. The Complaint neglects to identify the nature or the resolution of Defendants' claims, let alone allege that those specific claims— as opposed to the earlier lawsuits—were brought without probable cause and with malice. Many of the allegations relate specifically to lawsuits other than the Federal Action. (*See* Compl. ¶¶ 24, 25, 27, 34–36.) The rest of the Complaint consists of general allegations of Defendants' conduct without any attendant timeframe or context as to how the conduct relates to Defendants' claims in the Federal Action.[7]

In short, to the extent Plaintiff's malicious prosecution claim arose from the claims Defendants helped bring in the Federal Action, the Complaint pleads no facts with respect to those claims specifically. Without factual allegations, Plaintiff's malicious prosecution claim cannot survive Defendants' Rule 12(b)(6) Motion and must be dismissed.

If a defective complaint can be cured, a plaintiff is entitled to amend the complaint before the action is dismissed. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Here, because Plaintiff may be able to cure the defect only with respect to Defendants' claims in the Federal Action, the Court will give him an opportunity to amend. Plaintiff shall only file an amended Complaint if he is able to cure the defect. If he files an amendment that fails to comply with Rule 8, the Court will dismiss the malicious prosecution claim, in its entirety, with prejudice.

### B. Abuse of Process

To state a claim for abuse of process, Plaintiff must allege sufficient facts to show that Defendants committed "(1) a willful act in the use of judicial process; (2) for an ulterior

---

[7] The Complaint alleges Defendants aided an employee in creating a false and misleading formula error which was blamed for the fraudulent overbilling; falsely represented that an attorney was investigating the billing fraud while knowing that attorney was protecting and representing Zowine; actively prevented the termination of an employee who had been identified as the person perpetrating the fraud; and accused Plaintiff of engaging in the Medicare billing fraud, despite substantial evidence that Plaintiff had no access to that aspect of the business. (Compl. ¶¶ 28–30, 32.) The Complaint links none of these allegations to a claim for malicious prosecution related to Defendants' claims brought in the Federal Action.

purpose not proper in the regular conduct of the proceedings." *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 (Ariz. Ct. App. 2004). Using the judicial process for its authorized purposes—even if done with bad intentions or with incidental spiteful motives—does not constitute abuse of process. *Morn v. City of Phoenix*, 730 P.2d 873, 875–76 (Ariz. Ct. App. 1986) (finding no abuse of process when the plaintiff's suit was brought to seek redress for perceived wrongs but also had an incidental purpose of "getting even" with the defendants). Plaintiff must show that the process was used *primarily* to pursue an improper purpose. *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. Ct. App. 1982). In other words, the use of judicial process must be "so lacking in justification" that it "could not logically be explained without reference to the defendant's improper motives." *Id.*; *Crackel*, 92 P.3d at 889.

Like Plaintiff's claim for malicious prosecution, his claim for abuse of process lacks factual allegations sufficient to withstand a Rule 12(b)(6) motion. The Complaint begins by making general allegations of Defendants' misconduct, as described in footnote 7. The gist of the allegations are that Defendants acted dishonestly in protecting Zowine while attempting to shift the blame for the improper billing onto Plaintiff. However, these allegations contain no timeframe and are untethered from any specific judicial proceeding, and, more importantly, use of judicial process. Plaintiff alleges Defendants "advocated in written pleadings, motion practice, and oral argument" that a formula error, which Defendants allegedly knew to be false, was the cause of the billing issue. (Compl. ¶ 31.) But in addition to the dearth of facts as to (1) which motions, pleadings, or arguments in (2) which legal proceeding and when,[8] this singular statement falls far short of showing this was the primary purpose of the alleged use of process.

The Complaint then proceeds to simply recite the chronology of all the underlying litigation. It alleges Defendants knew the lawsuits they filed (*i.e.*, the State Court Actions)

---

[8] The "when" component is crucial. As Defendants point out, Plaintiff does not "identify a single use of process that occurred within two years of filing this action," the limitations period for an abuse of process claim. (Reply at 9); *see Kurtz v. Goodyear Tire & Rubber Co.*, No. CV-19-00152-PHX-GMS, 2019 WL 2996054, at *2 (D. Ariz. July 9, 2019); A.R.S. § 12-542.

- 8 -

were frivolous and without probable cause and that Defendants brought "multiple, frivolous claims and motions in an effort to drain [Plaintiff's] financial resources." (Compl. ¶ 43.) Again, the Complaint contains no detail as to the specific judicial process employed, or when it was used. This particularity is essential in light of the protracted legal history between Plaintiff and Zowine, much of which occurred over two years ago. The Court cannot extrapolate from Plaintiff's vague statements the basis for his claim.

Accordingly, Plaintiff fails to state a claim for abuse of process. Plaintiff is granted leave to amend, with the same admonition that any amendment must comply with Rule 8 or face dismissal with prejudice.

### C. Aiding and Abetting

The elements of aiding and abetting tortious conduct are "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Wells Faro Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 23 (Ariz. 2002).

Defendants contend the Complaint fails to properly allege the first element. By definition, a claim for aiding and abetting requires at least two tortfeasors. *Ortiz v. Zurich Am. Ins. Co.*, No. CV-13-02097-PHX-JAT, 2014 WL 1410433, at *5 (D. Ariz. Apr. 11, 2014) (citing Restatement (Second) of Torts § 876 cmt. a). Thus, Plaintiff must adequately plead an independent primary tort—here, committed by Zowine—and that Defendants took separate action in concert with Zowine's alleged tort. *Fromkin v. Indymac Bank FSB*, No. 10-CV-8014-PCT-PGR, 2010 WL 2541167, at *5 (D. Ariz. June 18, 2010). The Complaint alleges that Zowine oversaw Zoel; orchestrated a fraudulent scheme to overcharge the State of Arizona; psychologically harassed and physically attacked Plaintiff; ignored a court order in the Termination Action enjoining his harassment; harassed the court-appointed receiver in the Termination Action; and engaged in "abusive

conduct" in attempt to end Plaintiff's investigation into the billing practices and steal Plaintiff's ownership interest in MGA.

While some of these allegations could potentially subject Zowine to civil liability, the Complaint fails to allege which facts specifically amount to a breach of fiduciary duty or to whom that duty was owed.[9] Instead, the Complaint alleges only that Defendants "aid[ed] and abet[ed] the breach of fiduciary duty." (Compl. ¶ 3.) There are many kinds of fiduciary duties and a breach can assume many forms; several allegations pertaining to Zowine may each qualify as a breach, while others may not. When given the opportunity to clarify, via a Response, which fiduciary duties were breached and to whom they were owed—Plaintiff, MGA, Zoel, or otherwise—Plaintiff provided no legal authority under which his allegations of breach arise. It is not enough to assert a series of actions taken by an alleged primary tortfeasor, who is not a party to the action, and leave the Court and Defendants to determine which of those actions may constitute the primary tort foundational to the aiding and abetting claim. If a Complaint fails to adequately allege the primary tort, it derivatively fails to allege the second and third elements of the claim, as liability of a secondary tortfeasor inherently depends on what the primary tort is.

In short, the Complaint's haphazard factual pleading (1) precludes the Court and Defendants from ascertaining the precise nature of Zowine's primary tort and (2) fails to demonstrate Defendants' knowledge of and substantial assistance in accomplishing the same (as opposed to merely representing Zowine in legal proceedings after the fact). *See Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977, 988 (Ariz. Ct. App. 2008) (holding the encouragement or assistance must be a "a substantial factor in *causing the resulting tort*") (emphasis added).[10] Accordingly, Plaintiff fails to state a claim for aiding and abetting

---

[9] Indeed, some allegations pertain to Zowine's actions aimed not at Plaintiff, but at third parties such as the State of Arizona or a court-appointed receiver. (Compl. ¶¶ 18, 29.)

[10] To the extent the primary tort is fraud, the Complaint fails to comply with Rule 9(b)'s heightened pleading standards. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.").

tortious conduct. Plaintiff is granted leave to amend and shall only file an amendment if it will comply with the pleading standards of Rule 8, and if applicable, Rule 9(b).

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss (Doc. 9). Plaintiff's claim for malicious prosecution with respect to the State Court Actions is time-barred and therefore dismissed with prejudice. His claims for malicious prosecution with respect to the Federal Action, abuse of process, and aiding and abetting are dismissed with leave to amend.

**IT IS FURTHER ORDERED** granting Plaintiff leave to file a First Amended Complaint within 14 days of this Order, only if and to the extent he can cure the defects described in this Order.

Dated this 26th day of February, 2020.

Honorable John J. Tuchi
United States District Judge